against her, and the beginning of her notice put at the commencement of 1902. From that date until 1907—five years—she further delayed, and she gives no sufficient excuse therefor, saying only that she was a nonresident, and had not the means to employ counsel. If nonresidence was an impediment to her, she still has it to cope with, for the bill in this case was verified by her at the city of New York. Such an excuse is of no avail. Meanwhile, by her own admissions, the property has advanced from an inconsiderable value in 1896 or 1898, till it is now worth $20,000. It is too clear for argument that she has waited upon its advance before seeking its recovery, in the meantime leading the defendant to believe in the repose of his title and possession. This is an act that a court of equity will not tolerate, and the suit, I am impressed, is therefore barred by complainant's laches.

For the reasons assigned, the demurrer will be sustained.

---

### KIMPTON v. UNITED STATES.

#### (Circuit Court, S. D. New York. November 14, 1908.)

#### Nos. 5,206, 5,207, 5,239–5,242.

CUSTOMS DUTIES (§ 47*)—DUTIABLE VALUE—"COVERINGS"—CONTAINERS.

Customs Administrative Act June 10, 1890, c. 407, § 19, 26 Stat. 139 (U. S. Comp. St. 1901, p. 1924), providing that the dutiable value of imports shall include "the value of all cartons, cases, crates, boxes, sacks and coverings of any kind," is not limited to encasements similar to "cartons, cases," etc.; and the term "coverings" extends to containers of liquids and similar substances, such as tins, kegs, jars, and terrines.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 20; Dec. Dig. § 47.*

For other definitions, see Words and Phrases, vol. 2, p. 1705.]

Actions by Kimpton, Magnus & Lauer, H. A. Metz & Co., Austin, Nichols & Co., and Frame & Co. against the United States.

These proceedings relate to two decisions by the Board of General Appraisers, affirming the assessment of duty by the collector of customs at the port of New York. One of the two decisions, which is reported as G. A. 6,704 (T. D. 28,686), reads as follows:

SOMERVILLE, General Appraiser. Each of these protests involves the construction of Customs Administrative Act June 10, 1890, c. 407, § 19, 26 Stat. 139 (U. S. Comp. St. 1901, p. 1924),[1] entitled "An act to simplify the laws in relation to the collection of the revenues." The character of the merchandise and of the coverings or containers holding it is of the following description:

(1) Stoneware jars containing fruit jams assessed at 1 cent per pound and

---

[1] The pertinent portion of this section reads as follows:

"Sec. 19. That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price of such merchandise, * * * including the value of all cartons, cases, crates, boxes, sacks, and coverings of any kind, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States."

35 per cent., under Tariff Act July 24, 1897, c. 11, § 1, Schedule G, par. 263, 30 Stat. 171 (U. S. Comp. St. 1901, p. 1651). Protest 259,900.

(2) Stoneware receptacles called "terrines," which contain prepared meat assessed at 25 per cent. under paragraph 275, 30 Stat. 172 (U. S. Comp. St. 1901, p. 1652). Protest 258,166.

(3) Tins containing prepared vegetables assessed at 40 per cent. under paragraph 241, 30 Stat. 170 (U. S. Comp. St. 1901, p. 1649). Protest 258,166.

(4) Tins containing pineapples, assessed at 25 per cent., under paragraph 263, 30 Stat. 171 (U. S. Comp. St. 1901, p. 1651). Protest 260,952.

(5) Tins containing fish (caviare), assessed at 30 per cent. under paragraph 258, 30 Stat. 171 (U. S. Comp. St. 1901, p. 1650). Protest 261,008.

(6) Casks containing liquid gum and sizing assessed as gum advanced, at 1¼ cents per pound and 10 per cent. ad valorem under paragraph 20, Schedule A, 30 Stat. 152 (U. S. Comp. St. 1901, p. 1628) and as soap at 20 per cent., under paragraph 72, 30 Stat. 155 (U. S. Comp. St. 1901, p. 1631). Protest 264,081.

The value of these containers was in every instance included in the total appraised value of the merchandise, and the containers were assessed for duty at the same ad valorem rates, respectively, as the goods themselves, under the provisions of said section 19 of the act of June 10, 1890. The importers claim in each case that these containers are not dutiable at the same rate as the contents or otherwise, but are free of duty, and that said section 19 relates only to cartons, crates, boxes, sacks, and similar coverings, suitable only for covering dry or solid merchandise. It is further claimed that, if not entitled to free entry, these coverings or containers are subject to duty at various rates under the provisions of certain paragraphs of the tariff act recited in the protests, which it is unnecessary for us to specify with particularity.

All of the goods being subject to ad valorem rates of duty, the question for determination is whether these various containers, consisting of stoneware jars, tin coverings, casks, and other receptacles above specified, were properly included in the appraised value of the merchandise and subject to the same rates of duty as the contents.

The purpose of all statutory construction is to ascertain the intent of the lawmaker; and the rule laid down by Lord Coke, and since universally approved, makes it proper to consider, for this purpose (1) what was the law before the act was passed, (2) what was the mischief or defect for which the law had not provided, (3) what remedy the Legislature has appointed, and (4) the reason for the remedy.

In the case of Holy Trinity Church v. U. S., 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226, Mr. Justice Brewer, speaking for the Supreme Court of the United States, after stating that all laws should receive a sensible construction, and that general terms should be so limited in application as not to lead to injustice, oppression, or an absurd consequence, observed as follows:

"Another guide to the meaning of the statute is found in the evil which it is designed to remedy; and for this the court properly looks at contemporaneous events, the situation as it existed and as it was pressed upon the attention of the legislative body."

While the rule prescribed by Congress for ascertaining the dutiable value of imported merchandise, for the purpose of estimating the ad valorem duty to be assessed thereon, has been constantly changing in policy, almost since the foundation of the government, yet, as observed in the report of the committee on ways and means, as made to Congress, hereafter cited, "from March 1, 1823, to March 3, 1883, a period of sixty years, coverings, packing charges, etc., were elements of the dutiable value of imported goods, except during the brief period intervening between the acts of March 3, 1865 (13 Stat. 493, c. 80), and July 28, 1866 (14 Stat. 328, c. 298)." All of these statutes are carefully reviewed in the case of Meyers v. Shurtleff (C. C.) 23 Fed. 577, decided May 13, 1885, up to and including the enactment by Congress of section 7 of the act of March 3, 1883, c. 121, 22 Stat. 523. It was held in that case that said section 7 of the act of March 3, 1883, repealed section 2907 of the United States Revised Statutes, and prohibited the value of coverings of merchandise from being estimated as a part of its dutiable value; and it was held accordingly that the value of barrels in which Portland cement was imported could

not be added to the wholesale price of the article as an element of its dutiable value. Said section 2907 provided that in determining the dutiable value of merchandise there should be added to the cost or the actual price or general market value at the time of exportation, among numerous other charges, the "value of the sack, box or covering of any kind in which such merchandise is contained." It was further decided in the same case, as we have said, that section 7 of the act of 1883 above cited repealed said section 2907 of the Revised Statutes, by providing, among other things, that the "value of the usual and necessary sacks, crates, boxes, or coverings of any kind," shall not be estimated as part of their value in determining the amount of duties for which they are liable. Of a similar purport was the decision of the Supreme Court of the United States in the case of Oberteuffer v. Robertson, 116 U. S. 499, 6 Sup. Ct. 462, 29 L. Ed. 706. The court in this case reviewed the Congressional enactments in force when the act of 1883 was passed, and held accordingly that under the provisions of the latter act the cost or value of certain paper cartons or boxes in which hosiery or gloves were packed, and the cost or value of the packing of the goods in the cartons, and of the cartons in the outer case, were not dutiable items, either by themselves or as a part of the value of the goods, provided they were the usual coverings of such merchandise as distinguished from those that were unusual. This decision revolutionized the practice previously followed by customs officers and by the courts.

It was to this decision and its consequences that the particular attention of Congress was drawn by the committee of ways and means, when the customs administrative act was under consideration by that body. Mr. McKinley, in making the report of this committee to the House of Representatives, Fifty-First Congress, First Session, Report No. 6, called special attention to the decision of the court in the Oberteuffer and Robertson Case. The following language was used in this report:

"Early after the passage of the act of 1883 Secretary Folger invited the attention of Congress to the difficulties encountered in administering this section; and Secretaries Manning and Fairchild repeatedly expressed to Congress their views as to the impracticability of securing the just appraisement of merchandise while this section remained in force."

He further quoted from the report of Secretary Windom as follows:

"It is necessary, in order to enable appraising officers to make uniform and satisfactory appraisements. that they be relieved from the embarrassments imposed upon them by the law which exempts the coverings, charges, etc.. from duty, and which has been productive of constant trouble, fraud, and litigation. In very many cases the merchandise has no market value apart from its coverings and incidental packing; and the arbitrary rule that a part of this value shall be deducted in the assessment of duty is illogical, and in fact requires the appraising officers to do an impossible thing—to work an incongruity."

Such seems to be the view of the old law and the evils existing under its administration, which was pressed upon the attention of Congress when the customs administrative act was passed. This report of the ways and means committee, with the reasons given by them for the enactment of said section 19 of the customs administrative act, is unquestionably competent evidence to throw light on the intent of Congress in the enactment of the law. Trinity Church Case, 143 U. S. 487, 12 Sup. Ct. 511, 36 L. Ed. 226; Mosle v. Bidwell, 130 Fed. 334, 65 C. C. A. 533 (T. D. 25,276). The Board of General Appraisers, since their organization in 1890, and the various federal courts have uniformly interpreted said section 19 in accordance with the view reached by the ways and means committee in the above report.

The case of U. S. v. Wood (C. C) 85 Fed. 212, involved the determination of the market value of oats contained in burlap bags, which were the usual coverings of such merchandise; and it was held that the value of the article as a whole, including the coverings. should be taken as the market value of the merchandise, even though the covering, if separately imported, would have been free of duty. It was observed by the court as follows:

"The collector was not estimating the value of an importation of burlaps, nor of bags for grain, made of burlaps. He was estimating ad valorem oats

in bags. He was ascertaining its value at its place of exportation, in the condition in which it was exported. And surely the fact that it was put into bags, handled in bags, and exported in bags, gave to the merchandise a value measured by its own inherent value, plus the cost of the bags. The collector was estimating the value of a compound article—oats in bags."

In Smith v. U. S. (C. C.) 91 Fed. 757, it was held by the court for the Southern district of New York that glass jars containing preserves, which were held not to be bottles, were dutiable with the preserves as coverings, and as a part of the market value of the importation. In U. S. v. Dickson, 73 Fed. 195, 19 C. C. A. 428, the Circuit Court of Appeals, Second Circuit, had under consideration the dutiable character of bottles containing ginger ale, under paragraph 248 of the tariff act of 1894 (Act Aug. 27, 1894, c. 349, Schedule H, 28 Stat. 526). It was held by the court that the collector was prevented under the express requirements of the law from adding the value of the bottles to the value of the ale, as coverings under the customs administrative act of June 10, 1890. It was observed by Judge Lacombe as follows:

"Ordinarily, bottles may properly be considered as coverings of their contents, and treated accordingly. But for many years Congress has legislated in customs acts for bottles eo nomine, as a separate subject of duty."

It was held accordingly that bottles could not be embraced in the term "coverings," as used in said section 19, on the ground that they were specially subject to a separate duty as bottles under other paragraphs of the tariff act, and that it could not be assumed that Congress intended to levy cumulative duties upon them by taxing the articles both as bottles and coverings.

In Hempstead's Case (C. C.) 96 Fed. 94, Judge Gray, sitting for the circuit for the Eastern district of Pennsylvania, passed on the dutiable character of certain glass tubes containing chloride of ethyl, which is a liquid. These containers were designated as coverings, which were held to be the usual coverings of merchandise, and not liable to a separate duty as unusual coverings under the provisions of said section 19. Note, also, American Sugar Refining Company v. U. S., 99 Fed. 716, 40 C. C. A. 84, affirmed in effect by the Supreme Court, 181 U. S. 610, 21 Sup. Ct. 830, 45 L. Ed. 1024.

Such was the uniform view taken by the courts, and generally in customs practice, until the rendition by the Supreme Court of the United States of their decision in U. S. v. Nicholls, 186 U. S. 298, 22 Sup. Ct. 918, 46 L. Ed. 1173. It was there held that certain glass bottles filled, imported under the tariff act of 1894, and liable to an ad valorem duty, could not be regarded as coverings within the meaning of the provision of section 19 of the customs administrative act of 1890. The following language was used by Mr. Justice Brown, in delivering the opinion of the court:

"Section 19 was intended to provide a general method for the assessment of ad valorem duties, and to require the value of all cartons, cases, crates, boxes, sacks, and coverings of any kind to be included in such valuation. We think the rule ejusdem generis applies to the words 'coverings of any kind,' and that glass bottles, which are never in ordinary parlance spoken of as coverings for the liquor contained in them, is such a clear departure from the preceding words as to exempt them from the operation of the section, provided at least they are taxed under a different designation. It is very singular that, if Congress intended to include under the words 'coverings of any kind' vessels containing liquors, it should not have made use of the words 'casks, barrels, hogsheads, bottles, demijohns, carboys,' or words of similar signification. The inference is irresistible that by the word 'coverings' it only intended to include those previously enumerated, and others of similar character, intended for the carriage of solids and not of liquids. Webster defines a covering as 'anything which covers or conceals, as a roof, a screen, a wrapper, clothing,' etc.; but to speak of a liquid as being covered by the bottle that contains it is such an extraordinary use of the English language that nothing but the most explicit words of the statute could justify that construction.

"So, by cartons, cases, crates, boxes, and sacks, we understand these encasements which are not usually of permanent value, and such as are ordinarily used for the convenient transportation of their contents. Indeed, it is quite possible that they were made taxable in a general way by the customs administrative act in order that, if they were so made as to be of further, use after

their contents were removed, they might not escape taxation. The ordinary cartons, cases, crates, boxes, and sacks are of no value after their contents are removed; but in order that they should not escape taxation altogether, if they were of permanent value, they were included in the general terms of the customs administrative act."

The most casual scrutiny of this decision shows that the case went off on the ground that Congress had legislated for bottles eo nomine as a separate subject of duty, and various decisions of the courts are cited in support of this view. The simple question decided by the court was that bottles of the kind under consideration were not to be regarded as "coverings" within the meaning of the customs administrative act. It was not necessary to decide more than this; and so much as was said by the learned judge in reference to the general condition of the word "coverings," while entitled to great respect, is not to be considered as binding upon this board or the courts, especially when opposed to uniform decisions running through a series of not less than 10 or 12 years. It may be observed, moreover, that the Nicholls Case was decided under the tariff act of 1894, and that the present tariff act of July 24, 1897, under which these importations were made, contains some relevant provisions that were not found in previous tariff acts. For example, the concluding phrase of paragraph 300 of the present tariff act, relating to the dutiable character of ginger ale and other articles contained in bottles, concludes with the phrase that "duty shall be collected on the bottles or other coverings at the rates which would be chargeable thereon if imported empty." So, paragraph 301, relating to mineral waters in bottles, contains the same phrase in substance, "that duty shall be quoted upon the bottles or other coverings at the same rates that would be charged thereon if imported empty or separately."

The phrase above used, "or other coverings," would seem to include all bottles other than those made of glass, which are specially subject to duty under paragraph 99 of said act. No such phrase occurred in the corresponding paragraphs (248 and 555) of the tariff act of 1894. So, also, paragraph 241 of the present act, relating to the dutiable character of beans, peas, etc., preserved in tins, jars, bottles, or similar packages, which are dutiable by weight, provides that there shall be included the "weight of all tins, jars and other immediate coverings." Again, paragraph 239 enumerates "milk, preserved or condensed, or sterilized by heating or other processes," which is made dutiable at 2 cents per pound, "including the weight of immediate coverings." The word "coverings" here manifestly refers to the coverings of milk in a liquid form as well as condensed.

Paragraph 281, whereby chocolate is made dutiable by weight, provides, among other things, as follows:

"The weight and value of all coverings other than plain wooden shall be included in the dutiable weight and value of the foregoing merchandise."

This weight and value would include the paper coverings as well as tin-foil coverings on chocolate. So that, for tariff purposes, a term or word used may often have a signification different from its ordinary lexicographical meaning. Hayes v. United States, 150 Fed. 63, 80 C. C. A. 17 (T. D. 27,806).

The enacting clause of the present tariff act provides for the levying and collection of duty upon "all articles imported from foreign countries," and mentioned in the schedules therein contained. The only exemptions from duty would seem to be where such articles are enumerated in the free list or are made free by some general principle of law as announced by the courts. For example, free goods imply free coverings; and so, goods subject to a specific rate as distinguished from an ad valorem rate of duty. U. S. v. Leggett, 66 Fed. 300, affirmed in 13 C. C. A. 450; Merritt v. Stephani, 108 U. S. 106, 2 Sup. Ct. 308, 27 L. Ed. 668; Hayes v. U. S., supra.

It would thus appear that the present tariff act at least, whatever might be said of previous ones, uses the word "coverings" in the sense of containers or packages.

The testimony shows that the merchandise under consideration is usually bought and sold in the condition in which it is imported, so as to include, as an entirety, the merchandise itself as well as the containers, and that it would often be impracticable to find a market value separately for the two entities.

In our judgment the containers or coverings in each of the two cases before cited were properly included in the appraised value of the merchandise as a part and parcel of its market and dutiable value. It follows from those principles that the protests should be overruled, and the collector's decision affirmed in each case; which is accordingly ordered.

We have given this question a rather elaborate consideration, in view of its importance and of the vast amount of revenue involved in a decision of the underlying principles on which our conclusion is made to rest.

Walden & Webster (W. Wickham Smith, of counsel), for importers.

J. Osgood Nichols, Asst. U. S. Atty.

MARTIN, District Judge. Affirmed on the opinion of the Board of General Appraisers.

———

LAWRENCE v. SOUTHERN PAC. CO. et al.

(Circuit Court, E. D. New York. November 25, 1908.)

1. REMOVAL OF CAUSES (§ 86*)—PETITION FOR REMOVAL—ALLEGATION OF NON-RESIDENCE.

An averment, in a petition for removal, that defendant is, and was at the time of the commencement of the suit, a citizen and resident of another state named, is equivalent to an allegation of nonresidence in the state of suit, and is sufficient.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 173; Dec. Dig. § 86.*]

2. REMOVAL OF CAUSES (§ 31*)—DIVERSITY OF CITIZENSHIP—FORMAL PARTIES.

Defendants, who were joined in a suit in a state court to recover an interest in lands only as trustees holding the paramount title in trust, and whose title as such was not disputed, *held* not indispensable parties, whose citizenship and residence in the same state as complainant would prevent a removal of the cause by the other defendants, who were the real parties in interest.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 71; Dec. Dig. § 31.*]

On Motion to Remand to State Court.

Battle & Marshall (David Gerber and H. Snowden Marshall, of counsel), for plaintiff.

Joline, Larkin & Rathbone (Arthur H. Van Brunt, of counsel), for defendant Houston & T. C. R. Co.

CHATFIELD, District Judge. A long statement of facts on the present application seems unnecessary. Certain litigation has been had in the state courts, resulting in the dismissal of the complaint. MacArdell v. Olcott, 189 N. Y. 368, 82 N. E. 181. A second action, upon allegations growing out of the same state of facts, but setting forth a different cause of action, has been brought in the Supreme Court of the county of Queens, in the state of New York, by Walter B. Lawrence, on behalf of himself and other stockholders of the Houston & Texas Central Railway Company, against Southern Pacific Company, Frederic P. Olcott, Central Trust Company of New York,

———
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes